UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ANTONE PAULINO, JR.,

     Plaintiff,

v.                                                                              Case No. 5:21-cv-121-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

     Defendant.
_____/


**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for

Social Security Income (SSI) and Disability Insurance Benefits (DIB).  For the reasons

discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1973, has an eighth-grade education, and has past

relevant work experience as a landscape laborer, truck driver, and construction worker.

(R. 36, 110, 302).  In August 2019, the Plaintiff applied for SSI and DIB, alleging

disability as of his application date due to gout, diabetes, headaches, back issues

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

(including with respect to the "lower lumbar" region), high blood pressure, and chronic obstructive pulmonary disease.  (R. 110, 120).   The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 119, 129, 147, 163).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in mid-September 2020.  (R. 46–73, 209–10).  The Plaintiff was represented by counsel at that proceeding and testified on his own behalf.  (R. 46, 52–66).  A vocational expert (VE) also testified.  (R. 66–72).

In a decision issued in late September 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since his alleged onset date in August 2019; (2) had the severe impairments of diabetes, obesity, Chiari malformation, degenerative joint disease of the left knee, and degenerative disc disease of the thoracic and lumbar spine; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform a reduced range of sedentary work subject to certain physical and environmental limitations, including— of relevance here—the use of a cane when ambulating; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 27–38). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 38).

The Appeals Council denied the Plaintiff's request for review. (R. 11–16). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court

"may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff raises two challenges on appeal: (1) the ALJ improperly discounted the Plaintiff's subjective complaints of pain and other symptoms; and (2) the ALJ erred in formulating the Plaintiff's RFC.  (Doc. 21).  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenges lack merit.

### A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to engage in his past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945.  To do so, an ALJ must decide based upon all of the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's impairments and related symptoms.  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ must review the medical opinions of record, as well as all the claimant's medically determinable impairments and the total limiting effects of each.  *Id.* §§ 404.1520(e), 404.1545(a)(3), 416.920(e), 416.945(a)(3); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

The evaluation of a claimant's subjective complaints is governed by the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms.  *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing

6

*Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ, however, "need not cite particular phrases or formulations" in conducting this assessment, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's testimony about pain, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence.  *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the Plaintiff testified at the hearing that he suffered from back pain and other ailments which prevented him from working.  (R. 32).  He also reported numbness in his legs and poor balance, and added that he could only walk approximately 150 feet before needing a break and only sit for about fifteen minutes. *Id.*  As for his daily activities, the Plaintiff stated that while he mostly watched television, he was able to make a sandwich and to go to the store.  *Id.*  He further testified that he had been using a cane for the last year and a half because his leg would give out. *Id.*

In her decision, the ALJ referenced the Plaintiff's subjective complaints, as well as the Eleventh Circuit's pain standard and her duty to account for all of a claimant's

symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* (citing of 20 C.F.R. §§ 404.1529(c), 416.929(c); Social Security Ruling (SSR) 16-3p, 2017 WL 4790249 (Oct. 25, 2017)).   The ALJ also rendered the following express credibility determination regarding the Plaintiff's complaints of pain:

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 33).

In support of this assessment, the ALJ engaged in an extensive summary of the Plaintiff's medical records, including those pertaining to his complaints of back pain and the care he received for that malady.  (R. 33–36).  The ALJ noted at the outset that the Plaintiff's reports of back pain began in 2015 after a workplace accident and that, according to the Plaintiff, a magnetic resonance image of his lumbar spine taken at some point in time evidenced a central disc protrusion with a slight indentation of the ventral dural sac.  (R. 33) (citations omitted).  The ALJ also observed, however, that the Plaintiff was referred for updated imaging in 2018 but apparently lost the order, and that there was no documentation of the Plaintiff obtaining any "surgical intervention" to address his reports of back pain.  *Id*. (citations omitted).

The ALJ additionally reviewed in detail the records of the Plaintiff's treatment at a pain management center which commenced in May 2019 under Dr. Anuj Sharma.

*See* (R. 33–35) (citations omitted).  As the ALJ described in her decision, those records revealed the following.

At his first visit under Dr. Sharma's care, the Plaintiff advised that he had a history of back pain dating back to 2015 and rated his pain a ten out of ten.  (R. 33) (citation omitted).  A physical examination performed at the time "showed [that the Plaintiff had] an independent but antalgic gait," "muscle spasms and tenderness in the lumbar paraspinal muscles," a restricted range of motion in his lumbar spine, an impaired sensation in his lower extremities, and a bilaterally positive seated-straight-leg-raise test.  (R. 33–34) (citations omitted).  The Plaintiff also displayed normal reflexes and coordination, however, as well as normal muscle strength throughout his extremities.  *Id.* (citations omitted).  Based on the results of this examination, the Plaintiff was prescribed Tylenol No. 4 for his pain.  (R. 34) (citation omitted).

At a follow-up appointment the next month, a physical examination of the Plaintiff was again conducted and was found to be "generally consistent" with the previous one.  *Id.* (citations omitted).  The Plaintiff, however, "reported poor pain control with Tylenol No. 4" and was prescribed hydrocodone.  *Id.* (citation omitted).

The Plaintiff's next appointment occurred in July 2019 and revealed that he had experienced "overall pain relief, a better quality of life, and less pain with activities as a result of the . . . treatment plan" which was then in place.  *Id.* (citations omitted).

During this visit, the Plaintiff was also given a prescription for Elavil.[5]   *Id.* (citations omitted).

This positive treatment outcome continued through the Plaintiff's next appointment in August 2019, when he reported adequate overall pain relief.   *Id.*   As a result, the clinic continued him on hydrocodone.   *Id.* (citations omitted).

At the Plaintiff's September 2019 appointment, he complained of "increased neck and back pain" but stated that the relief he was receiving from his pain was "satisfactory."   *Id.* (citations omitted).   The Plaintiff was again kept on hydrocodone and was additionally prescribed a muscle relaxant, Flexeril.   *Id.* (citation omitted); (R. 36) (citation omitted).

The Plaintiff's October 2019 and November 2019 examinations were largely the same as his prior appointments, and he continued to report "satisfactory overall pain relief and [an] improvement in his quality of life."   (R. 35) (citations omitted).   The Plaintiff's medication regime for his pain symptoms stayed the same as well, and included hydrocodone, Flexeril, and Elavil.   *Id.* (citations omitted).

The Plaintiff visited the pain management clinic again in both January 2020 and March 2020, and his physical examinations and his prescribed medications associated with those visits mainly remained unchanged.   *Id.* (citations omitted).   His pain

---

[5] Elavil is an anti-depressant medication that "is also used for neuropathic pain and to prevent headaches." (R. 36).  It was used here, "in combination with other medications, to treat the Plaintiff's pain symptoms." *Id.* (citation omitted).

prescriptions, including for hydrocodone and Elavil, were refilled again in May 2020 and July 2020.  *Id.* (citations omitted).

In addition to the above records documenting the Plaintiff's care under Dr. Sharma, the ALJ discussed in her decision the results of a consultative examination conducted by Dr. Sam Ranganathan in October 2019.  (R. 34) (citation omitted).  As the ALJ noted, the Plaintiff advised during this evaluation that he had a history of back pain and described his daily activities as including "mak[ing] sandwiches, driv[ing], shower[ing,] and dress[ing]."  *Id.* (internal quotation marks and citations omitted). The Plaintiff acknowledged that he was able to go to the grocery store as well.  *Id.* (citation omitted).

The ALJ also referenced that Dr. Ranganathan's physical examination of the Plaintiff demonstrated, *inter alia*, that the Plaintiff "was able to get on and off the examination table," that he had a generally normal range of motion throughout his spine and upper extremities, that his "[m]uscle strength was 5/5 throughout[,] except at the left lower extremity, which was 4+/5," and that he "was able to walk without an assistive device but limped on the left foot."  *Id.* (citations omitted).  The ALJ further observed that, according to Dr. Ranganathan, imaging of the Plaintiff's lumbar spine indicated there were small osteophytes at L1-L5 and prominent osteophytes at T10-11 and T12.  (R. 35) (citation omitted).[6]

---

[6] Broadly speaking, the human spine consists of four parts: the cervical spine (i.e., the neck); the thoracic spine (i.e., the upper and/or middle back); the lumbar spine (i.e., the lower back); and the sacral spine (i.e., the lowest part of the spine, which is just above the coccyx).  *See generally* HOUSTON D. SMITH, GEORGIA SOFT TISSUE INJURIES § 3-8 (Supp. Apr. 2021).  The location of the vertebrae in

Following the ALJ's analysis of all the information before her, including that set forth above, the ALJ found:

> [T]he evidence of record shows *conservative, non-surgical* treatment for [the Plaintiff's] complaints of back pain.  During the relevant time period, the [Plaintiff]'s treatment has consisted exclusively of medication management. . . .  The pain management records reflect that it was used, in combination with other medications, to treat his pain symptoms.  The physical examinations have shown abnormalities[,] such as paraspinal tenderness and reduced range of motion of the lumbar spine, but have consistently shown normal neurological examinations, normal range of motion of the extremities and normal muscle strength[.]

(R. 36) (citations omitted) (emphasis added).

The Plaintiff now posits several arguments in support of his challenge that the ALJ incorrectly discounted his self-reports of pain and other symptoms.  Each of these contentions will be addressed in turn.

The Plaintiff first asserts that, contrary to the ALJ's characterization, his treatment was not "conservative" given that he was prescribed hydrocodone, which he maintains is a strong medication.  (Doc. 21 at 9–10).  To buttress this assertion, the Plaintiff cites the Eleventh Circuit's decision in *Henry v. Commissioner of Social Security*, 802 F.3d 1264 (11th Cir. 2015) (per curiam).  In *Henry*, the court found that the ALJ erred by not fully crediting the claimant's allegations of pain based on a significant gap between the claimant's treatments, which the ALJ construed as evidencing an

---

the cervical, thoracic, lumbar, and sacral spine are referred to as C1, 2, 3, etc.; T1, 2, 3, etc.; L1, L2, L3, etc.; and S1, 2, 3, etc., respectively.  *See* 4 ROSCOE N. GRAY, M.D. & LOUISE J. GORDY, M.D., L.L.N., ATTORNEY'S TEXTBOOK OF MEDICINE § 13A.02 (3d ed. 2021).

improvement in the claimant's maladies. *Id*. at 1269.  The court noted that the ALJ

should have instead fully and fairly developed the record to address whether—as the

claimant averred—this lapse in treatment stemmed from the claimant's financial

difficulties, not because of his condition getting better.  *Id.*

Pertinent to the Plaintiff's argument here, the court in *Henry* included a footnote

in its opinion, in which it mentioned a statement made by the magistrate judge in her

decision to the effect that the claimant received a narcotic-like medication used to treat

severe pain, which the magistrate judge found to be inconsistent with the ALJ's

determination that the claimant's treatment was "conservative." *Id*. at 1268 n.2.  The

Plaintiff extrapolates from this footnote that "the use of strong pain medications

generally undermines any suggestion that a claimant received only 'conservative'

treatment." (Doc. 21 at 9–10) (citing *Henry*, 802 F.3d at 1268 n.2).

There are a number of problems with the Plaintiff's argument.  To begin, the

Eleventh Circuit's comment in the footnote in *Henry* is just that, a comment.  It does

not represent the holding of the case.

Moreover, contrary to the Plaintiff's claim, the ALJ here did not deem the

Plaintiff's reports of back pain to be less credible because the record revealed "only

conservative" treatment of those symptoms (Doc. 21 at 9) but because it showed only

"conservative, *non-surgical* treatment" (R. 36) (emphasis added).  In other words,

unlike *Henry*, the ALJ in this case utilized the term "conservative" to mean medical

care that did not involve surgery.

Notably, the ALJ's statement that the evidence demonstrated the Plaintiff did not avail himself of a surgical remedy for his back pain appears to be an accurate assessment of the information before the ALJ, and the Plaintiff does not argue otherwise.   It also bears mentioning that the ALJ's reliance on the success of conservative, *non-surgical* treatment for the Plaintiff's back pain in evaluating the Plaintiff's subjective complaints is bolstered by other opinions issued in this District. *See*, *e.g.*, *Green v. Saul*, 2020 WL 5743185, \*6 (M.D. Fla. Sept. 25, 2020) (finding that, unlike surgery, treatment with narcotic medications constitutes "conservative" medical care); *Doig v. Colvin*, 2014 WL 4463244, at \*4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment *which is short of surgery*.  Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e.[,] *not surgery*.") (emphasis added).

In *Green*, for example, the court rejected the claimant's contention that the ALJ erred in suggesting the claimant's pain was not severe because she received only conservative treatment—in the form of prescription narcotics—for her symptoms. *Green*, 2020 WL 5743185, at \*6.  In doing so, the court observed that "[m]edication is conservative[ ] *relative to surgery* and other invasive forms of treatment."  *Id.* (emphasis added) (citing *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x. 672, 676–77 (11th Cir. 2020) (prescription medication was part of a conservative treatment plan)); *Pennington v.*

14

*Comm'r of Soc. Sec.*, 652 F. App'x. 862, 873 (11th Cir. 2016)).  The court in *Green* went

on to find:

> [I]t is self-evident that successful treatment—whether conservative or otherwise—may undermine claims of disabling limitations.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").  Here, the [ALJ] could reasonably conclude from the medical records that the plaintiff's medication regimen was successful because it enabled her to function with few medication side effects.

2020 WL 5743185, at *6; *see also Doig*, 2014 WL 4463244, at *4 ("When prescribed

medication effectively relieves pain, the pain does not limit a plaintiff's ability to

perform work demands.  A course of conservative treatment tends to negate a claim

of disabling pain.") (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)).

The Plaintiff's second contention in support of his first challenge is that the ALJ

wrongly suggested his "neurological examinations were consistently normal" because

his straight leg tests were usually positive, which—the Plaintiff asserts—reinforces his

testimony that he experienced radicular pain in both legs.  (Doc. 21 at 10).  This

contention is likewise unavailing.

In her decision, the ALJ discussed the results of the above-referenced tests,

along with the countervailing treatment notes which evidenced that the Plaintiff had

normal neurologic examinations with normal extremity strength and generally intact

sensation.  (R. 31–36).  The ALJ also observed that the Plaintiff's pain management

physician, Dr. Sharma, found the Plaintiff to have intact motor strength, coordination,

and deep tendon reflexes. *Id.* To the extent that the Plaintiff now wishes the Court to reweigh this evidence, the Court cannot do so. *Carter*, 726 F. App'x at 739 (stating that a reviewing court "may not decide the facts anew" or "re-weigh the evidence") (citing *Moore*, 405 F.3d at 1211). The Plaintiff's contention is also misplaced insofar as it merely identifies information in the record that buttresses his position rather than establishes that the ALJ's determination is not bolstered by substantial evidence. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

The Plaintiff's final contention in support of his first challenge is that "the ALJ did not address [his] daily activities, which were rather limited." (Doc. 21 at 10). This contention does not survive scrutiny as well.

As an initial matter, although the Regulations include a claimant's daily activities as one of a number of factors for an ALJ to consider in assessing the intensity and persistence of a claimant's subjective complaints of pain, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), an ALJ need not explicitly discuss all of these factors in her decision. *Ruscito v. Astrue*, 2009 WL 1841592, at *5 n.9 (M.D. Fla. June 24, 2009) (citing *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1349 n.9 (M.D. Fla. 2001), *aff'd*, 31 F. App'x 202 (11th Cir. 2001); *French v. Massanari*, 152 F. Supp. 2d 1329, 1338 n.6 (M.D. Fla. 2001)). Even were that not the case, the ALJ did, in fact, analyze the

16

Plaintiff's reported daily activities, including the Plaintiff's ability to shower, dress, drive, and grocery shop.  (R. 32, 34).

In sum, the ALJ conducted a robust review of the information before her which related to the Plaintiff's subjective complaints of back pain and other symptoms, and also cited to specific items in the record which demonstrated that the Plaintiff's symptoms did not entirely cohere with that evidence.  Accordingly, the Court finds that the ALJ's decision to discount the Plaintiff's subjective complaints of pain is supported by substantial evidence.  *See Biestek*, 139 S. Ct. at 1154 (noting that the substantial evidence standard is satisfied where there is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion") (internal quotation marks and citations omitted).

B.

As previously noted, the Plaintiff's second challenge is that the ALJ erred in rendering her RFC determination because she did not sufficiently account for the Plaintiff's need for a cane.  This challenge also fails.

As described earlier, the ALJ found at step four that the Plaintiff had the RFC to engage in a reduced range of sedentary work subject to various physical and environmental limitations, including that the Plaintiff "must use a cane when ambulating."  (R. 31–36).  In rendering this assessment, the ALJ acknowledged that the Plaintiff testified he had been utilizing a cane for over a year, that treatment records showed the Plaintiff employed a cane for walking, and that the consultative examiner,

Dr. Ranganathan, opined that the Plaintiff's use of a cane was "medically necessary." *See, e.g.*, (R. 34, 36) (citations omitted).

The Plaintiff now argues that the ALJ's resolution of the question of his need for a cane contravenes Social Security Ruling (SSR) 96-9p, which governs the circumstances under which an ALJ must include a limitation for a hand-held assistive device, such as a cane, in her RFC determination. SSR 96-9p, 1996 WL 374185 (July 2, 1996). The Plaintiff asserts in this regard that the ALJ erred by not finding that a cane was required for his "stability and not just for ambulation." (Doc. 21 at 16–18). In an attempt to bolster this assertion, the Plaintiff claims that Dr. Ranganathan concluded he needed a cane for both of these purposes. *Id*. at 17.

> SSR 96-9p states, in relevant part:
>
> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996).

By its terms, SSR 96-9p mandates that a claimant "present medical documentation (1) establishing [his] need for a cane or other device and (2) describing the circumstances for which it is needed." *Williams v. Acting Comm'r of Soc. Sec. Admin*, 2019 WL 2511592, at *3 (M.D. Fla. June 18, 2019) (citations omitted). The Plaintiff has not satisfied his burden here.

As a threshold matter, it not clear that Dr. Ranganathan's assessment of the Plaintiff's need for a cane supports the Plaintiff's position. Dr. Ranganathan made that assessment on a standard form used for "determin[ing] whether or not an assistive device is medically necessary" under the Regulations. (R. 406). In completing the form, Dr. Ranganathan denoted, in pertinent part, that the Plaintiff required a cane to walk. *Id.* In response to a subsequent question regarding the "circumstances [for which] the device [was to be] used," Dr. Ranganathan circled "stability" instead of "support" or "balance." *Id.* A fair reading of this notation is that Dr. Ranganathan intended to communicate the Plaintiff's need for a cane for stability *while* walking, not for stability *in addition to* walking. *Id.*

Irrespective of this issue, the ALJ's accommodation in her RFC determination for the Plaintiff's use of a cane for ambulating comports with SSR 96-9p and is supported by substantial evidence. As referenced above, the ALJ "explicitly consider[ed]" the Plaintiff's need for such an assistive device and included a restriction to address this concern given that Dr. Ranganathan opined a cane was necessary and given that there was medical evidence the Plaintiff utilized one while walking. (R. 36); *see also Ebenroth v. Saul*, 2020 WL 583057, at *7 (S.D. Ga. Jan. 14, 2020), *report and recommendation adopted*, 2020 WL 583166 (S.D. Ga. Feb. 5, 2020). The Plaintiff fails to point to evidence in the record that undermines the ALJ's disposition of this issue. *See Washington*, 906 F.3d at 1359 ("[T]he overall burden of demonstrating the existence of a disability . . . rests with the claimant.'") (quoting *Doughty*, 245 F.3d at 1280); *Sims*, 706 F. App'x at 604 ("Under a substantial evidence standard of review, [the claimant]

19

. . . must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes*, 932 F.2d at 1358).   As such, the Plaintiff's second challenge is unavailing.

IV.

In light of all the above, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 14th day of November 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record